Edward H. Ellis, Inc. v. Commissioner.
Edward H. Ellis, Inc. v. Commissioner
Docket No. 111814.
United States Tax Court
1943 Tax Ct. Memo LEXIS 332; 1 T.C.M. (CCH) 995; T.C.M. (RIA) 43199; April 29, 1943
*332 Reasonable rates of depreciation on machinery determined. Reasonable salary for petitioner's president fixed. Lynwood Lord, Esq., for the petitioner. Paul E. Waring, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined deficiencies of $19,728.60 in income tax and $5,556.06 in excess-profits tax of the petitioner for the year 1936. Two errors are alleged: (1) The allowance as depreciation of $38,640.31 in lieu of $95,718.90 claimed on the return; and (2) the disallowance of $12,000 out of $24,000 claimed as a deduction for salary paid petitioner's president, Edward H. Ellis. Most of the facts were stipulated and the stipulation, with exhibits, is a part of the record in the case. The following facts taken from the stipulation and from the oral testimony adequately present the issues. [The Facts] Prior to August 1935 petitioner was engaged in the business of general road contractor, building and surfacing highways and bridges. On August 7, 1935 petitioner entered into a contract with the United States Government for the excavation of 3,046,400 cubic yards of earth on the northerly side of the Delaware & Chesapeake Canal in Delaware *333 and Maryland in connection with the widening of such Canal. Prior to said date petitioner owned two tractors. On August 21, 1935 it purchased five tractors for use on the canal job. On August 23, 1935 it purchased two tractors and in May 1936 it purchased ten additional tractors. On August 28, 1935 it purchased seven Le Tourneau scrapers for use on the canal job. Prior to August 1935 petitioner owned one Northwest shovel which it used in connection with its road-building work. On September 3, 1935 and on April 10, 1936 it purchased two additional shovels for use on the canal job. Petitioner's contract with the government provided that the work should be completed within a period of 365 days from the date of notice to proceed. The contract, with certain exceptions, required petitioner to obtain 90 per cent of its employees from the relief rolls; forbade any person working on the job from being employed longer than 40 hours in any one week, or from working on legal holidays or Sunday. It was necessary for petitioner to train operators for its tractors, shovels, and graders. There was a heavy turnover in employment. Permission was obtained from the War Department to operate the job *334 24 hours a day, excepting Sundays and legal holidays. The ground where the excavation was being made became extremely dry and dust accumulated to four or five inches in depth. The soil was sandy and the sand and dust penetrated the motors and gears of the equipment, causing many breakdowns and abnormal wear. The equipment was operated 24 hours a day, employing three shifts of operators and without opportunity for adequate servicing of the equipment. The grades on which the equipment was used varied from 30 feet to 100 feet in depth, the grades varying from 10 to 18 per cent. Petitioner kept accurate records of the hours of use of all the equipment in question. The canal job was completed in November 1936 and the seven Le Tourneau scrapers were sold in that year. Petitioner endeavored unsuccessfully to sell all of its tractors but succeeded in selling only seven of them. On March 15, 1937 petitioner filed amended corporation income and excessprofits tax returns for the calendar years 1934 and 1935, in which it changed its method of computing depreciation from the so-called "straight line method of depreciation" to an "hours in use method of depreciation." For the year 1936 petitioner *335 filed its tax return on the hours in use method of depreciation. For preceding years, 1930 to 1935, petitioner originally had claimed depreciation on the straight-line method and did not ask or obtain the prior approval of the Commissioner for a change in method in 1936. The respondent disapproved petitioner's claim for depreciation and applied the straight-line method to all the equipment. Petitioner accepts the results obtained by the straight-line method as to all equipment other than that involved herein. Edward H. Ellis, president of the petitioner, received salary as follows: 1931, $26,250; 1932, $11,500; 1933, 1934, 1935, $12,000 each year; 1936, $24,000. During the performance of the government contract Ellis worked approximately 16 hours a day, and during most of the period performed, in addition to the duties of president, the duties of general manager of the company, the manager, who had been paid approximately $4,000 a year, having been discharged. The gross sales and net income (net loss) of petitioner for the years 1930 to 1936 were reported on its returns as follows: Year
Sales
Net income (Net loss)
1930
$ 930,895.98
$ 43,866.81 (nine months only)
1931
1,033,564.30
98,110.19
1932
258,251.99
(19,425.73)
1933
336,578.42
(9,357.88)
1934
369,233.65
(4,501.70)
1935
275,053.03
(18,909.28) Amended return
($3,231.03)
1936
659,873.82
4,193.86
*336 Petitioner paid no dividends during the above years. [Opinion] Under the above facts petitioner claims that it should be entitled to compute depreciation on the basis of hours of use of the equipment involved. Most of this equipment was especially purchased for the government job and was of a heavier type than usually used by petitioner. The record shows that due to the abrasive type of material being handled, the operation of the machines by inefficient and illy trained employees, and the operation for 24 hours a day with insufficient time for repairs or maintenance, the equipment was subject to abnormal wear and tear and depreciation. In such premises the normal recovery of depreciation based on an 8-hour day would not serve to reimburse petitioner for depreciation suffered. We believe petitioner sustained, and is entitled to deduct, abnormal depreciation for the taxable year. In no other way will its income be accurately reflected. Since petitioner regularly employed and made its return on the straight-line method of depreciation and neither asked nor obtained prior approval by the Commissioner to change its method for 1936 or the two preceding years, we cannot approve *337 petitioner's method of computation of depreciation on the hours in use basis. . However, the data furnished as to abnormal use and actual depreciation suffered are useful in determining the ultimate question whether respondent has made an adequate allowance for depreciation. As above indicated, the record fully establishes that the heavy machinery here involved was subjected to abnormal and severe use and it depreciated at a more than normal rate. These facts should be recognized in the rate of depreciation applied. We find that reasonable rates of depreciation under the specific circumstances for the year 1936 are as follows: Le Tourneau scrapers and
tractors
37 1/2 per cent
Shovels
40 per cent These percentages will be applied to the appropriate unrecovered cost as to each item in question. The second issue is the reasonableness of salary paid to Edward H. Ellis, president of the petitioner. The record shows that for each of the preceding three years Ellis was paid $12,000. For the taxable year $24,000 was paid and claimed. The evidence indicated that by reason of the government *338 contract the duties of the president during 1936 were unusually heavy and difficult. In addition Ellis assumed and performed the duties of a former vice-president and general manager who had been paid approximately $4,000 a year. It is our opinion, under the facts, that a salary of $24,000 for the taxable year was reasonable compensation for petitioner's president and such sum is accordingly fixed and allowed. Decision will be entered under Rule 50.